UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER LEA HEAVLIN,

                Petitioner,

                                        CASE NO. 2:20-CV-11705

v.                                  HONORABLE NANCY G. EDMUNDS

JEREMY HOWARD,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan

prisoner Jennifer Lea Heavlin ("Petitioner") was convicted of operating a motor vehicle

while intoxicated causing death, MICH. COMP. LAWS § 257.625(4), and failing to stop at the

scene of an accident, MICH. COMP. LAWS § 257.617(3), following a jury trial in the Wayne

County Circuit Court and was sentenced to concurrent terms of 7 to 15 years imprisonment

on those convictions in 2017.  In her habeas petition, she raises claims concerning the

effectiveness of trial counsel, the jury instructions, the sufficiency of the evidence, and the

conduct of the prosecutor.  For the reasons set forth, the Court denies the petition for a writ

of habeas corpus, denies a certificate of appealability, and denies leave to proceed in forma

pauperis on appeal.

II.     **Facts and Procedural History**

Petitioner's convictions arise from a motor vehicle accident that resulted in the death of a woman passenger in another vehicle in November, 2014.  The Michigan Court of Appeals described the relevant facts, which are presumed correct on federal habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises out of a motor-vehicle accident in the early hours of November 8, 2014, which caused the death of Michelle Smith. Smith was in the front-passenger seat of a vehicle driven by her boyfriend, Mark Pagan.[1] A vehicle owned by defendant was traveling in the opposite direction. As Pagan was making a left turn, the front-passenger corner of defendant's vehicle struck the front-passenger side of Pagan's vehicle, causing Smith's death. Inspector James Pouliot, head of the "Downriver Crash Response Team," determined that both drivers were at-fault in the accident. Pagan made an improper left-hand turn by "cutting it sharp" instead of making a 90-degree turn at the intersection. Officer Aaron Biniarz, another member of the Crash Response Team, determined that at the time of impact defendant's vehicle was traveling 34 miles per hour in a 25 miles-per-hour zone. According to Pouliot, if defendant's vehicle was traveling the speed limit, the collision "probably" would not have occurred. Similarly, if Pagan made a proper left turn, the accident would not have occurred because defendant's vehicle "would have already passed" the intersection.
>
> The primary question raised by the defense at trial was whether defendant was the driver of her vehicle at the time of the accident. Brian Tarcia testified that he came upon the accident and exited his vehicle to see if he could offer help. Tarcia observed defendant exiting her vehicle through the driver-side door.[2] Tarcia said that defendant told him that she had called an ambulance and that he should leave. Tarcia then heard people from the other vehicle yelling for help, and he called 911. Tarcia said that defendant offered him

--------

[1]Pagan's cousin, Joseph Yates, was also in the vehicle.

[2]It was undisputed that the front-passenger door to defendant's vehicle was stuck shut and that defendant would have exited through the driver-side door even if she was a passenger in the vehicle.

money for a ride and tried to enter his vehicle. After Tarcia directed her away from his vehicle, defendant "took off running." Based on descriptions obtained from witnesses at the scene, law enforcement found defendant at a nearby gas station. Defendant denied that she had been drinking and that she was involved in an accident. She was taken to the hospital, where she submitted to a blood test. The results were 0.192 grams of alcohol per 100 milliliters of blood, more than twice the legal limit.

In an interview with law enforcement the next day, defendant admitted to being in her vehicle at the time of the accident but denied that she was the driver. About a year after the accident, defendant identified Bradley Williamson as the driver. Williamson testified that on the night of accident he drove defendant in her vehicle to a friend's house. However, he said that defendant left the house without him and he denied being the driver of the vehicle. Williamson willingly provided a DNA sample.

DNA evidence was recovered from defendant's vehicle's airbags. Jennifer Jones, a forensic biologist for the Michigan State Police, found that defendant's DNA matched the major donor to the driver-side airbag. Both airbags contained minor donor DNA profiles, but Jones was unable to make any conclusions regarding those profiles. Defendant presented the testimony of a DNA expert, Mark Perlin, who used probabilistic genotyping technology to analyze the DNA collected from the airbags.[3] Using this technology, Perlin found "strong" statistical evidence that both defendant's and Williamson's DNA were present in the mixture obtained from the driver-side airbag. Perlin estimated that 85% of the DNA corresponded to defendant and 15% corresponded to Williamson. As for the passenger-side airbag, Perlin found statistical support that defendant's DNA was present on the airbag but "no support and some exclusionary support" that Williamson's DNA was part of the mixture obtained from that airbag. Perlin estimated that "[r]oughly 40 percent" of the DNA found on the passenger-side airbag was attributable to defendant.

Closing arguments focused in large part on the interpretation of DNA evidence. The jury heard testimony about two types of DNA transfers, direct and secondary. A direct transfer is when a person transfers his or her DNA directly to an object. A secondary transfer occurs when that DNA is then transferred to a different object. The prosecutor argued that, even if the jury accepted Perlin's conclusions, it did not mean that Williamson was driving at

---

[3]The State did not yet have their probabilistic genotyping software "online" when it analyzed the DNA evidence in this case.

the time of the accident. The prosecutor stated that it was more likely that Williamson's DNA was transferred to the driver-side airbag through a secondary transfer, via the prior occasions that he was in defendant's vehicle. The defense explained that defendant's DNA was on the driver-side airbag because, as a passenger in the vehicle, she crawled over the driver's seat, thereby wiping her face on the airbag.

*People v. Heavlin*, No. 337758, 2019 WL 96501, *1-2 (Mich. Ct. App. Jan. 3, 2019) (footnotes in original).

Following her convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims, including those raised on habeas review. The court remanded the case for a pre-sentence investigation report correction, but otherwise affirmed her convictions. *Id.* at *2-9. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Heavlin*, 504 Mich. 902, 929 N.W.2d 361 (2019).

Petitioner thereafter filed her federal habeas petition raising the following claims:

I.      Trial counsel was ineffective for failing to make a diligent effort to locate a critical defense witness.

II.     The jury instructions did not include the standard instruction regarding contributory negligence, so they failed to give the jury all the information it needed to have a reliable causation determination. The judge plainly erred by failing to give the instructions, or in the alternative counsel was ineffective for failing to request it.

III.    Petitioner was denied effective assistance of trial counsel where trial counsel did not motion trial court for their own reconstruction accident expert to challenge the State's two experts, Poulict and Piniarz, knowing full well that their testimony would favor the State's theory thus leaving petitioner without any supportive expert testimony to favor the petitioner. Trial counsel was fully aware of Poulict's preliminary testimony which would be given again at trial.

IV.     Petitioner is entitled to have her operating while intoxicated causing death conviction vacated due to insufficiency of evidence to support all elements.

4

V.     The trial judge abused its discretion by allowing the prosecutor to commit misconduct by (1) denigrating petitioner's expert witness Dr. Perlin, (2) continually arguing with Dr. Perlin, (3) prejudicing the jury against Dr. Perlin's techniques, (4) reducing Dr. Perlin's credibility to the jury, (5) mischaracterizing Dr. Perlin's DNA interpretation forensics results, (6) telling the jury that Dr. Perlin's interpretations are unreliable because no *Daubert* hearing had ever occurred in Michigan to prove the reliability when in fact the prosecutor waived his rights to a *Daubert* hearing, (7) mischaracterizing the evidence, and (8) eliciting false testimony from witness Brian Tarcia.

Respondent filed an answer to the habeas petition contending that it should be denied the second claim is barred by procedural default and all of the claims lack merit.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court

and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

 "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

 The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is

6

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id*.  Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*.; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014).  Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Woods v. Donald*, 575 U.S. 312, 316 (2015).  A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.  *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72.  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, 562 U.S. at 100.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court

decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.     Discussion

### A.     Effectiveness of Trial Counsel - Claims I, III

Petitioner first asserts that she is entitled to habeas relief because trial counsel was ineffective for failing to make a diligent effort to locate a defense witness and for failing to file a motion for a defense accident reconstruction expert to challenge the prosecution's experts. Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal

8

defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, a petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair proceeding. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690.  A reviewing court's scrutiny of counsel's performance is highly deferential.  *Id*. at 689.  There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective

assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 1. Failing to Locate a Witness

Petitioner asserts that trial counsel was ineffective for failing to make a diligent effort to locate a witness, Naomi Gonzalez, to testify for the defense. Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim explaining in relevant part:

> At the preliminary examination, Gonzalez testified that she came upon the crash scene and saw someone leaving defendant's vehicle with "a jacket and a hood on." Gonzalez said she did not see the person's face, nor could she identify the person's gender. This testimony is arguably favorable to the defense's theory that Williamson was the driver of the vehicle. However, upon closer examination, Gonzalez's testimony is not consistent with that theory. Gonzalez testified that she saw only one person leave defendant's vehicle and did not see anyone else in the vehicle. Yet, according to the defense, Williamson would have been the first person to leave the vehicle, followed by defendant, as the passenger door was stuck shut. So, viewed in context, Gonzalez's testimony offers little, if any, support for the defense theory. Rather, her testimony was consistent with the prosecution's theory that there was only one person in defendant's vehicle at the time of the accident.
>
> Further, Gonzalez's description of the person leaving defendant's vehicle was consistent with other witness's descriptions. Again, Gonzalez said that the person exiting defendant's vehicle was wearing a jacket with a "hood on." Other witnesses told law enforcement that the person fleeing the crash scene was wearing a plaid jacket. Further, Gonzalez said that the person she saw left the crash scene on Porter Ave., which was consistent with the

witnesses who testified at trial that defendant traveled in that direction. Gonzalez also testified that the person she saw was "a little bit" taller than her, which accurately describes defendant's height. Moreover, an officer testified that when defendant was brought back to crash scene, Gonzalez identified defendant as "the person that fled from the scene." Thus, had Gonzalez testified at trial, she could have been impeached with her police statement.

In sum, Gonzalez's preliminary examination testimony was somewhat favorable to defendant because she could not identify the gender of the person leaving the car. However, she saw only one person, which was inconsistent with defendant's theory. In addition, Gonzalez provided no evidence affirmatively supporting the defense. Further, there is evidence that on the date of the incident she had identified defendant as the person fleeing the scene. One may argue with counsel's decision not to call Gonzalez as a witness, but the decision, when viewed solely on the basis of the present record, had a strategic basis.

In support of her motion to remand to the trial court for an evidentiary hearing, defendant provides an offer of proof that trial counsel wanted to call Gonzalez as a witness but lost her contact information and failed to reobtain it. Assuming that this is true, counsel's actions were not objectively reasonable. However, for the reasons discussed, we conclude that Gonzalez did not offer defendant a substantial defense, i.e., "one that could have affected the outcome of the trial," *Putnam*, 309 Mich. App. at 248, and therefore defendant was not prejudiced by the alleged error. Further, we note that, on appeal, the prosecutor provides Gonzalez's handwritten statement to the police in which she identifies defendant as the person she saw leaving the vehicle.

*Heavlin*, 2019 WL 96501 at *3 (footnotes omitted).

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary.  *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  The duty to investigate "includes the obligation to investigate all witnesses who

may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Trial counsel may have reasonably decided not to call Gonzalez as a witness because her potential trial testimony was, in several respects, consistent with the testimony from prosecution witnesses, her testimony conflicted with the defense theory that two people were in Petitioner's car at the time of the accident, and she had identified Petitioner as the driver of the vehicle to police shortly after the accident. Given such circumstances, counsel's decision was strategic and reasonable. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *Moss v Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Moreover, even if trial counsel's failure to call Gonzalez as a witness constitutes deficient performance, Petitioner fails to show that she was prejudiced by counsel's conduct. As discussed by the state court, Gonzalez's potential testimony was not particularly favorable to the defense. Furthermore, given the significant evidence of guilt presented at trial, *see* discussion *infra*, there is no reasonable probability that her testimony would have affected the outcome at trial. Petitioner fails to establish that trial

12

counsel was ineffective under the *Strickland* standard.

### 2.     Failing to Request a Defense Accident Reconstruction Expert

Petitioner also asserts that trial counsel was ineffective for failing to request a

defense accident reconstruction expert to challenge the prosecution's expert witnesses.

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim

stating in relevant part:

> An attorney's decision on whether to call an expert witness is a matter of trial strategy. *People v. Payne*, 285 Mich. App. 181, 190; 774 N.W.2d 714 (2009). The record does not reveal whether trial counsel consulted an accident reconstruction expert. We note that trial counsel's cross-examination of the prosecution's accident reconstruction witnesses was very limited. However, while it is possible that a different expert would have reached different conclusions, e.g., that defendant was traveling less than 34 miles per hour, defendant does not present an offer of proof as to the expected testimony of a defense accident reconstruction expert. "Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *People v. Carll*, 322 Mich. App. 690, 703; 915 N.W.2d 387 (2018). Thus, even assuming that trial counsel erred by not retaining an expert witness, defendant fails to establish that she was prejudiced by that error.

*Heavlin*, 2019 WL 96501 at *3.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts.  Petitioner fails to

show that trial counsel erred and/or that she was prejudiced by counsel's conduct.  She

offers no expert testimony or other evidence to support her assertion that the prosecution

experts' testimony was erroneous or could have been successfully refuted by another

expert.  Conclusory allegations, without evidentiary support, are insufficient to warrant

federal habeas relief.  *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007);

*Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective

13

assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing on habeas review).   Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard.   Habeas relief is not warranted on these claims.

**B.     Jury Instructions and the Effectiveness of Counsel - Habeas Claim II**

Petitioner next asserts that she is entitled to habeas relief because the trial court erred by failing to provide the jury with the standard instruction on contributory negligence and, alternatively, trial counsel was ineffective for failing to request it.   Respondent contends that this claim is procedurally defaulted (in part) and that it lacks merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned.   Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.   *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).   A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.   *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).   The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair.   *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.   State law instructional errors rarely form the basis for federal

14

habeas relief. *Estelle*, 502 U.S. at 71-72.

The Michigan Court of Appeals denied relief on this claim stating in relevant part:

In this case, the jury was instructed that it was required to find that defendant was both a factual and proximate cause of Smith's death and was given accurate definitions of those terms. The jury was also instructed in accordance with M Crim JI 16.15:

There may be more than one cause of death. It is not enough that the defendant's act made it possible for the death to occur. In order to find that the death of Michelle Smith was caused by the defendant, you must find beyond a reasonable doubt that the death was the natural or necessary result of defendant's acts.

Defendant argues that the trial court erred in failing to also give the jury M Crim JI 16.20, which provides:

If you find that [named deceased ] was negligent, you may only consider that negligence in deciding whether the defendant's conduct was a substantial cause of the accident.

This instruction is based on the decision in *People v. Tims*, 449 Mich. 83, 97-99; 534 N.W.2d 675 (1995), which reaffirmed that negligence on the part of the decedent is not an affirmative defense, but that a jury may consider the decedent's negligence in determining whether the defendant's actions were a proximate cause of death. Defendant's argument that the trial court could have given a modified version of this instruction, i.e., with reference to the negligence of the other driver, has some merit. However, M Crim JI 16.15 accurately explains the proximate cause standard and it was not plain error not to give M Crim JI 16.20. No error results from the omission of an instruction if the instructions as a whole covered the substance of the omitted instruction. *Kurr*, 253 Mich. App. at 327.[7]

Even if M Crim JI 16.20 (or some variation thereof) should have been presented to the jury, it is not more probable than not that the instruction would have led to a different outcome. "[T]he contributory negligence of a decedent will not exonerate a defendant of criminal responsibility, where the defendant's negligence is a proximate cause of the decedent's death." *People v. Bailey*, 451 Mich. 657, 678; 549 N.W.2d 325 (1996) (citation

---

[7]For the same reasons, we reject defendant's alternative argument that trial counsel was ineffective for not requesting the instruction.

omitted). There was substantial evidence presented to the jury from which it could find that defendant was a proximate cause of the victim's death. Defendant was highly intoxicated and driving 10 miles per hour over the speed limit around 3.00 a.m. She had a BAC of .192, over twice the legal limit. When officers found defendant at the gas station, she was "staggering, unbalanced." Officers declined to perform a field sobriety test because it was apparent that defendant was intoxicated and that it would have been unsafe to perform those tests. Officer Biniarz testified that there was no evidence of "any pre-impact braking," which allowed the jury to infer that defendant was so intoxicated that she made no effort to avoid the collision. Thus, substantial evidence supported the conclusion that a death arising from a motor-vehicle accident was a direct and natural result of defendant's actions.

Defendant also suggests that the court should have instructed the jury that a defendant is not a proximate cause of the accident if there was an intervening, superseding cause. As the Supreme Court stated in *Feezel*:

> Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability. [*Schaefer*, 473 Mich. at 437]. Ordinary negligence is considered reasonably foreseeable, and it is thus not a superseding cause that would sever proximate causation. *Id*. at 436-437. In contrast, "gross negligence" or "intentional misconduct" on the part of a victim is considered sufficient to "break the causal chain between the defendant and the victim" because it is not reasonably foreseeable. *Id*. Gross negligence, however, is more than an enhanced version of ordinary negligence. *Id*. at 438. "It means wantonness and disregard of the consequences which may ensue ...." *People v. Barnes*, 182 Mich. 179, 198; 148 NW 400 (1914). "Wantonness" is defined as "[c]onduct indicating that the actor is aware of the risks but indifferent to the results" and usually "suggests a greater degree of culpability than recklessness ...." Black's Law Dictionary (8th ed.). [*Feezel*, 486 Mich. at 195-196.]

Thus, in order for a jury to have found Pagan's actions to be a superseding intervening cause they would have needed to conclude that his conduct constituted gross negligence. Pagan had a BAC of .08, just over the legal limit. MCL 257.625(1)(b). The Supreme Court has declined to decide "[w]hether, in a multiple vehicle accident, a victim-driver's intoxication raises a presumption of gross negligence ...." *Feezel*, 486 Mich. at 196 n 5. Defendant also points out that Pagan made an improper left turn even though he could see headlights of an oncoming vehicle "coming towards [him] from behind the train tracks," or, as one officer put it, "a little over the length of a yard of a house." Defendant argues this was grossly negligent

because Pagan saw the danger of executing a turn when he could see approaching traffic. However, Pagan's testimony indicates that his error was in underestimating how fast defendant's vehicle was traveling, an explanation that is certainly consistent with the fact that defendant was speeding. Moreover, Pagan was traveling at a safe speed and a reasonable jury could not conclude that an action as common as cutting a turn short constitutes gross negligence rather than ordinary negligence. Pagan's turn was not so unforeseeable that defendant should not be considered the proximate cause of the victim's death, especially considering that defendant was so intoxicated that she made no effort to avoid the crash.[8] For those reasons, even if the trial court should have given a jury instruction on superseding intervening cause, it is unlikely that the jury would have found that defendant was not a substantial cause of the accident. Accordingly, if there was an instructional error, defendant was not prejudiced.

*Heavlin*, 2019 WL 96501 at *4-5 (footnotes in original).

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  First, to the extent that Petitioner asserts that the trial court erred in instructing the jury under Michigan law, she merely alleges a violation of state law which does not justify federal habeas relief. *See, e.g., Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief").  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987);  *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)  ("a state court's interpretation of state law, including one announced on direct

---

[8]Section 627 of the Michigan Vehicle Code, MCL 257.1 et seq., provides in part:

(1) A person operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed ... having due regard to the traffic ... and any other condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. [MCL 257.627(1).]

appeal of the challenged conviction, binds a federal court on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Second, Petitioner fails to establish that the trial court's failure to give the standard contributory negligence instruction violated her federal due process rights. The trial court properly instructed the jury on the elements of the charged offenses, including factual and proximate causation. *See* 3/10/17 Trial Tr., ECF No. 8-20, PageID.1051-1054. In particular, the trial court instructed the prosecution must prove that "but for the defendant's operation of the vehicle the death would not have occurred" and that "death or serious injury must have been a direct and natural result of the operation of the vehicle." *Id*. at PageID.1051-1052. The trial court also instructed the jury that there "may be more than one cause of death. It is not enough that the defendant's act made It possible for the deat to occur ... you must find beyond a reasonable doubt that the death was the natural or necessary result of defendant's acts." *Id*. at PageID.1056. Such instructions were sufficient to inform the jurors that they must find that Petitioner's actions were the factual and proximate cause of the victim's death. Additionally, based upon the expert testimony at trial, the jury was well aware that the actions of the driver of the victim's vehicle also contributed to the accident. *See, e.g.*, 3/7/17 Trial Tr., ECF No. 8-17, PageID.754-755, 757, 764-765. Petitioner fails to show that the trial court's failure to give the standard contributory negligence instruction denied her a fundamentally fair trial.

Moreover, even if the trial court erred by failing to give the contributory negligence instruction, such error was harmless. For purposes of federal habeas review, a

constitutional error is considered harmless if it did not have a "substantial and injurious effect or influence" on the outcome of the proceeding. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). Furthermore, a state court's decision that an error was harmless constitutes an adjudication "on the merits" to which the highly deferential AEDPA standard applies. *Davis v. Ayala*, 576 U.S. 257, 269 (2015). Habeas relief is thus not warranted unless the state court's "'harmlessness determination itself was unreasonable.'" *Id*. (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)). In this case, given the substantial evidence of Petitioner's guilt presented at trial, *see* discussion *infra*, the alleged instructional error did not have a substantial or injurious effect on the jury's verdict.

Lastly, given the Michigan Court of Appeals' determination that the contributory negligence instruction was not warranted and/or that the failure to give the instruction was harmless error, Petitioner cannot establish that trial counsel erred and/or that she was prejudiced by counsel's conduct. Trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010). Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### C.    Sufficiency of the Evidence - Claim IV

Petitioner next asserts that she is entitled to habeas relief because the prosecution failed to present sufficient evidence to support her convictions – namely that she was the driver of the vehicle and that her actions were the proximate cause of the victim's death. Respondent contends that this claim lacks merit.

19

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted). The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). A federal habeas court may not re-weigh the evidence or re-determine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). Rather, the court must defer to the factfinder at trial for its assessment of the credibility of witnesses. *Id*.

As with any crime, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising

20

from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind.  *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78 (2000).

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim.  The court explained in relevant part:

> Defendant argues that there was insufficient evidence for the jury to find that she was driving her vehicle at the time of the accident. Contrary to defendant's assertion on appeal, her expert's DNA analysis did not definitively establish that Williamson was the driver of the vehicle. As the prosecutor argued at trial, one could accept Perlin's findings and still conclude that defendant—not Williamson—was in the driver's seat when the vehicles collided and the airbags deployed. Although Perlin found that both defendant's and Williamson's DNA was on the driver-side airbag, defendant was a major donor while Williamson was a minor donor. This evidence supports the conclusion that defendant was the driver of the vehicle.

> Defendant argues that her DNA transferred to the airbag when she climbed over the driver's seat to exit the vehicle. However, "it is unnecessary for the prosecutor to negate every reasonable theory consistent with the defendant's innocence. It is sufficient if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may provide." *People v. Carson*, 189 Mich. App. 268, 269; 471 N.W.2d 655 (1991). Further, if defendant was in the passenger seat when the airbags deployed, one would expect that the amount of DNA mixture attributable to her would be more than 40%. Regardless if 40% constitutes a major or minor donor in this case, it is significantly less DNA than what defendant left on the driver-side airbag. Thus, even accepting Perlin's findings, the DNA evidence is more consistent with defendant being the driver of the vehicle than Williamson. Moreover, the jury heard testimony about how Williamson's DNA could have been present in the vehicle when the airbags deployed even if he was not in the vehicle at the time of accident. In addition to driving the vehicle the night of the accident, Williamson estimated that he had driven the vehicle on about

21

15 other occasions. Additionally, in an interview with law enforcement, defendant disclosed that she and Williamson had sex in her vehicle.

Setting aside the DNA evidence, substantial circumstantial evidence supported the jury's finding that defendant was the driver of the vehicle. Defendant was the owner of the vehicle. Tarcia stopped at the crash and observed defendant exiting the vehicle. No witness saw anyone else exiting the vehicle. Defendant then fled the scene, which was evidence of guilty knowledge. *People v. Coleman*, 210 Mich. App. 1, 4; 532 N.W.2d 885 (1995). Initially, she denied to the police that she was even involved in the accident, and she did not identify Williamson as the purported driver of the vehicle until a year after the accident. Williamson testified and denied being the driver of the vehicle, which the jury apparently found credible. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich. App. at 619. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence presented for a rational jury to find that defendant was the driver of the vehicle. For the reasons discussed above, there was also sufficient evidence presented for a rational jury to find that defendant was a proximate cause of the accident.

*Heavlin*, 2019 WL 96501 at *6-7.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The prosecution presented sufficient evidence to establish that Petitioner was the driver of the vehicle at the time of the accident.  Such evidence includes the expert testimony that Petitioner was the major contributor of the DNA found on the driver's side airbag (the circular airbag), *see* 3/8/17 Trial Tr., ECF No. 8-18, PageID.799. and that her injuries were consistent with the damage to the steering wheel, *see* 3/7/17 Trial Tr., ECF No. 8-17, PageID.770-771, Brian Tarcia's testimony that he saw Petitioner exit the driver side of the vehicle, that she offered him money for a ride, and that she fled the scene on foot, *see* 3/6/17 Trial Tr., ECF No. 8-16, PageID.586-589, Petitioner's false statements to police when confronted at the gas station shortly after the accident, *see*, 3/7/17 Trial Tr., ECF No. 8-17, PageID.665-667,

Bradley Williamson's testimony that he was not driving Petitioner's vehicle nor was he in the vehicle at the time of the accident.  *See*  3/7/17 Trial Tr., ECF No. 8-17, PageID.696, and Shaun Byram's testimony that when he saw Petitioner and Williamson a day or two after the accident, Petitioner had visible injuries (injuries she showed him), but Williamson did not.  *See* 3/8/17 Trial Tr., ECF No.8-18, PageID.869, 883.  Such testimony, if believed, established that Petitioner was the driver of her vehicle at the time of the accident such that it was reasonable for the jury to convict her of the charged offenses.

Additionally, the prosecution presented sufficient evidence to establish that Petitioner's actions were the proximate cause of the victim's death.  Under Michigan law, the causation element of a criminal offense consists of both factual causation and proximate causation.  *People v. Feezel*, 486 Mich. 184, 194, 783 N.W.2d 67 (2010) (citing *People v. Schaefer*, 473 Mich. 418, 435, 703 N.W.2d 774 (2005)).  "Factual causation exists if a finder of fact determines that "but for" defendant's conduct the result would not have occurred."  *Id*. at 194-195 (citing *Schaefer*).  If the criminal result would not have occurred absent the defendant's conduct, then factual causation exists.  *Schaefer*, 473 Mich. at 435-36.  Proximate causation "is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural."  *Feezel*, 486 Mich. at 195 (citing *Schaefer*).  Proximate cause means that "[t]he victim's injury must be a 'direct and natural result' of the defendant's action."  *Schaefer*, 473 Mich. at 435.  "If the finder of fact determines that an intervening cause supersedes a defendant's conduct 'such that the causal link between the defendant's conduct and the victim's injury was broken,' proximate cause is lacking and criminal liability cannot be imposed."  *Feezel*, 486 Mich. at 195 (quoting *Schaefer*).  "In assessing

23

criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, only that he [or she] be a contributory cause that was a substantial factor in producing the harm.  The criminal law does not require that there be but one proximate cause of harm found.  Quite the contrary, all acts that proximately cause the harm are recognized by the law."  *People v. Bailey*, 451 Mich. 657,  676, 549 N.W.2d 325 (1996).

The evidence at trial provided sufficient evidence to show that Petitioner's conduct was both the factual and proximate cause of the victim's death.  Such evidence included police and expert testimony indicating that Petitioner was highly intoxicated at the time of the accident with a blood alcohol level of .192, more that twice the legal limit, *see* 3/7/17 Trial Tr., ECF No. 8-17, PageID.714-715, that she driving 9-10 miles per hour over the speed limit, *see id.* at PageID.724, 744, 755, that her driving speed was a cause of the crash, *see id.* at PageID.757, and that she did not brake to avoid the crash when the victim's car turned in front of her vehicle.  *See id.* at PageID.725.  Such testimony, if believed, was sufficient to demonstrate that Petitioner's drunk driving and speeding was both the factual cause and the proximate cause of the car accident and the victim's death. While the other driver's actions may have contributed to the accident, it was reasonable for the jury to conclude that such conduct was foreseeable, merely negligent, and did not break the causal link between Petitioner's actions and the victim's death.

Petitioner challenges the jury's evaluation of the testimony and evidence presented at trial.  However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts.  *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983)

("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict and the Michigan Court of Appeals' decision affirming that verdict were reasonable. Habeas relief is not warranted on this claim.

### E. Conduct of the Prosecutor - Claim V

Lastly, Petitioner asserts that she is entitled to habeas relief because the prosecutor engaged in misconduct by denigrating and arguing with defense expert Dr. Perlin, mischaracterizing the DNA evidence, telling the jury that Dr. Perlin's interpretations were unreliable when an evidentiary hearing was not requested by the prosecutor, and eliciting false testimony from witness Brian Tarcia. Respondent contends that these claims lack merit.

The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard). The standard "is a very general one, leaving courts more leeway ... in reaching outcomes in case-by-case determinations." *Parker*, 567 U.S. at 48 (punctuation modified). "That leeway increases in assessing a state court's ruling under AEDPA" because the court "cannot set aside a state court's conclusion on a federal

25

prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Stewart v. Trierweiler*, 867 F.3d 633, 638-639 (6th Cir. 2017)

The Michigan Court of Appeals denied relief on these claims explaining in relevant part:

> Defendant presents numerous allegations of prosecutorial misconduct, primarily focusing on the prosecutor's cross-examination of defense expert Perlin. Specifically, the prosecutor asked Perlin whether TrueAllele's scientific reliability had been proven in a Michigan court through a *Daubert* hearing, and he answered negatively. Defendant argues that this line of questioning was improper considering that the prosecutor declined to request a *Daubert* hearing for her expert. On cross-examination, a party "has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify, or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." *People v. Bell*, 88 Mich. App. 345, 349; 276 N.W.2d 605 (1979) (quotation marks and citation omitted). The prosecutor's questions on this matter properly highlighted for the jury that TrueAllele is a new and novel way to analyze DNA evidence. Trial counsel could have requested a curative instruction to inform the jury that the prosecution declined to request a Daubert hearing, and reversal is not warranted when the prejudicial effect of the prosecutor's statement could be cured by a curative instruction. *People v. Unger*, 278 Mich. App. 210, 235; 749 N.W.2d 272 (2008). Further, during redirect, Perlin testified that TrueAllele has been ruled reliable in several other states and that no such hearing has been held in Michigan. Thus, to the extent that the prosecutor's question was improper or misleading, trial counsel cured any harm to defendant.

> Next, defendant argues that it was improper for the prosecutor to ask Perlin about his compensation and to argue that the jury should consider the fact that he was being paid for his testimony in weighing his credibility. MRE 611(c) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Evidence of a witness's bias is "almost always relevant." *People v. Layher*, 464 Mich. 756, 764; 631 N.W.2d 281 (2001) (quotation marks and citation omitted). The fact that an expert witness is being paid to testify is relevant to his or her credibility because an expert witness may slant his or her testimony in favor of the retaining party. *See id*. at 763. Thus, it was not improper for the prosecutor to question Perlin about his compensation. Further, once

evidence of an expert's compensation was elicited, the prosecutor was "free to argue from the evidence presented at trial that an expert witness had a financial motive to testify." *Unger*, 278 Mich. App. at 237.

Defendant takes issue with the prosecutor confirming with Perlin that he did not have a "wet laboratory" and asking questions about his staff member's degrees. There was nothing improper about these questions. On direct examination, Perlin testified at length about TrueAllele and how this program works and therefore opened the door to questions about his work facility and the people who execute the TrueAllele software. More generally, defendant contends that the prosecutor impermissibly denigrated Perlin. As noted, the prosecutor had a right to a thorough cross-examination and he was not required to do so in the blandest possible terms. We also note that defendant does not argue that the prosecutor denigrated her or her counsel. Viewed in context, the prosecutor's cross-examination of Perlin did not deny defendant a fair trial.

Defendant also argues that the prosecutor mischaracterized the DNA evidence. "The prosecutor may not make a statement of fact that is unsupported by the evidence. But the prosecutor may argue reasonable inferences arising from the evidence to the extent that the inferences relate to the prosecutor's theory of the case." *People v. Lane*, 308 Mich. App. 38, 67; 862 N.W.2d 446 (2014) (footnotes omitted). Defendant contends that the prosecutor erred in telling the jury that Williamson's DNA could have transferred to the airbag without him being in the vehicle at the time of the accident. However, while the experts testified that a secondary transfer of DNA was less probable than a direct transfer, they also agreed that such a transfer is possible. Thus, the prosecutor did not commit misconduct in making this argument to the jury. Rather, the prosecutor made a reasonable inference from the evidence that Williamson's DNA was deposited on the driver-side airbag through a secondary transfer.

Defendant also argues that the prosecutor erred in stating that defendant was not a major DNA contributor to the passenger-side airbag. Perlin estimated that about 40% of the DNA found on that airbag belonged to defendant. Perlin conceded that it was unclear whether 40% meant that defendant should be considered a major contributor, considering that the other contributors were minor: "[T]he terminology is ambiguous. You could say she's the predominant contributor. Because some people call it major; some people call it minor." Perlin and the prosecutor also disagreed over whether Perlin referred to defendant as a "minor contributor" in his report. So there was evidentiary support for the prosecutor's argument that defendant was not a major contributor to the passenger-side airbag. In sum, the prosecutor did not misstate the DNA evidence.

> We have reviewed the remainder of defendant's claims of prosecutorial misconduct and conclude that they are without merit. Defendant argues that numerous comments by the prosecutor in opening statements and closing arguments were either misleading or misrepresentations of the evidence. Again, the prosecutor was allowed to make reasonable inferences from the evidence and he was not required to state his arguments in the blandest terms possible. We also conclude that there is no merit in defendant's claim that the prosecutor elicited false testimony from Tarcia.

*Heavlin*, 2019 WL 96501 at *7-8 (footnotes omitted).

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the prosecutor erred by questioning Dr. Perlin about his compensation, laboratory, staff, and scientific process, she is not entitled to relief. The state court ruled that such evidence was relevant to his credibility and properly admitted under state law. This Court is bound by that state law determination. *See, e.g., Bradshaw*, 456 U.S. at 76; *Sanford*, 288 F.3d at 860. A prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence. *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). Petitioner fails to show that the prosecutor erred, let alone that such conduct rendered her trial fundamentally unfair.

Second, Petitioner is not entitled to relief on her claim that the prosecutor improperly denigrated and argued with Dr. Perlin. It is well-settled that prosecutors "may strike hard blows," but they are "not at liberty to strike foul ones." *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger*, 295 U.S. at 88). In this case, the record shows that the prosecutor challenged Dr. Perlin's credibility and methods and argued from his testimony and the other testimony at trial that his conclusions were unreliable. A

prosecutor may argue reasonable inferences from the evidence, *Bates v. Bell*, 402 F.3d 636, 646 (6th Cir. 2005), and may argue from the facts that a witness is or is not worthy of belief.  *Portuondo v. Agard*, 529 U.S. 61, 69 (2000).  While the prosecutor may have aggressively cross-examined Dr. Perlin, he did not personally denigrate him.  Petitioner fails to show that the prosecutor's questions and argument with respect to Dr. Perlin were improper and/or that they rendered her trial fundamentally unfair.

Third, Petitioner is not entitled to relief on her claim that the prosecutor mis-characterized the DNA evidence.  While a prosecutor may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000)*, see also Stermer v. Warren*, 959 F.3d 704, 725 (6th Cir. 2020), a prosecutor can make arguments based upon the evidence and has "leeway to argue reasonable inferences from the evidence" during closing arguments.  *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011); *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  Such was the case here.  The prosecutor's argument that Petitioner was the major contributor of the DNA on the driver side airbag was supported by the expert testimony at trial, as was the prosecutor's argument that Petitioner was a minor contributor (40%) of the DNA on the passenger side airbag.  Petitioner fails to show that the prosecutor's argument was improper and/or that it rendered her trial fundamentally unfair.

Fourth, Petitioner is not entitled to relief on any claim that the prosecutor erred by questioning Dr. Perlin about TrueAllele's reliability for analyzing DNA evidence and arguing that his method was unreliable when the prosecutor failed to request an evidentiary hearing on the issue.  Again, the state court ruled that such evidence was

relevant and admissible under state law and this Court is bound by that decision.  *See, e.g., Bradshaw*, 456 U.S. at 76; *Sanford*, 288 F.3d at 860.  A prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence.  *Cristini*, 526 F.3d at 900. Additionally, any prejudice to Petitioner was mitigated by Dr. Perlin's testimony on re-direct that the TrueAllele method had been found to be reliable in other states but no such hearing had been held in Michigan.  Petitioner fails to show that the prosecutor's conduct in his regard rendered her trial fundamentally unfair.

Fifth, Petitioner is not entitled to relief on her claim that the prosecutor elicited false testimony from witness Brian Tarcia.  In particular, she alleges that Tarcia's testimony that she offered to pay him money for a ride and then fled the scene was false because a police officer testified that his report did not include that information.  The Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972).  It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false.  *Coe*, 161 F.3d at 343.  Petitioner bears the burden

of proving that the disputed testimony constituted perjury.  *Napue*, 360 U.S. at 270.

In this case, the mere fact that Tarcia testified about facts that were not included in a police report does not mean that his testimony was false, nor does it show that the prosecution knowingly presented false testimony.  The fact that a witness contradicts himself or changes his story does not establish perjury.  *See Macon v. Davis*, 450 F. App'x 491, 493 (6th Cir. 2011) ("[M]ere inconsistent statements by the same witness are insufficient to establish indisputable falsity.");  *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).  Mere inconsistencies in witnesses' testimony also do not establish the knowing use of false testimony.  *Coe*, 161 F. 3d at 343.  "While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty."  *Jackson v. Lafler*, No. 06-CV-15676, 2009 WL 1313316, *12 (E.D. Mich. May 11, 2009).  Petitioner fails to establish that Tarcia's testimony was false and/or that the prosecutor knowingly presented false testimony which rendered her trial fundamentally unfair.

Furthermore, the record shows that the trial court properly instructed the jurors on the law, explained that the attorneys' statements, arguments, and questions are not evidence, and directed the jurors to evaluate the credibility of witnesses and to decide the case based solely on the evidence.  *See* 3/10/17 Trial Tr., ECF No. 8-20, PageID.1057-1058.  Such instructions mitigated any potential prejudice to Petitioner.  *See, e.g., Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003); *Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).  Jurors are presumed to follow the court's instructions.  *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow

31

the law as charged, and they are expected to follow it.").  Petitioner fails to establish that the prosecutor engaged in misconduct which rendered her trial fundamentally unfair. Habeas relief is not warranted on these claims.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on her claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  Petitioner makes no such showing.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.  *See* FED. R. APP. P. 24(a).  Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED**.

                                        s/ Nancy G. Edmunds
                                        NANCY G. EDMUNDS
                                        UNITED STATES DISTRICT JUDGE

Dated:  March 20, 2023